# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MISTY L. WALKER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:12-483 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Misty L. Walker ("Walker") brings this action under 42 U.S.C. § 405(g), seeking review of an adverse decision on her application for disability-based benefits under the Social Security Act. A reviewing court's limited role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Reviewing courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when the record contains substantial support for the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Similarly, reviewing courts cannot resolve evidentiary conflicts or appraise the credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Neither can reviewing courts overturn the

Commissioner's administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

## I. Background

Walker claims disability due to mental impairments. Administrative law judge, Barry Peffley ("ALJ Peffley"), conducted an evidentiary hearing, and issued a written decision denying Walker's application. (T. 43-53).[1] After unsuccessfully requesting Appeals Council review, Walker timely instituted this proceeding. (Dkt. No. 1).

## II. Commissioner's Decision

ALJ Peffley utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way for determining disability applications in conformity with the Social Security Act.[2] A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

ALJ Peffley determined that Walker has severe, but not presumptively disabling mental impairments (schizophrenia, anxiety disorder, depression, and continuing drug dependence). He assessed Walker's residual functional capacity, and found that she can perform a full range of work at all *exertional* levels, but has *nonexertional* limitations emanating from her mental

---

[1] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

[2] *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).

impairments. These limit Walker to performing only simple, routine, repetitive tasks in a work environment free of fast pace production requirements, and work involving only simple work-related decisions with few, if any, workplace changes. Finally, she can tolerate only occasional interaction with the public, co-workers, and supervisors. (T. 47).

Significantly for present purposes, ALJ Peffley's residual functional capacity finding reflects that he gave *great weight* to opinions of state consultants (who, respectively, examined Walker and/or reviewed her entire medical record) as to the degree of limitations occasioned by Walker's impairments, but *little weight* to the opinion of a treating psychiatrist. He also considered Walker's subjective testimony regarding intensity, persistence and limiting effects of her symptoms as lacking credibility.

Relying on testimony from a vocational expert, ALJ Peffley found that Walker cannot perform her past relevant work as a cashier, sales attendant, fast food worker and bakery worker. Although that work is unskilled, it requires more contact with the public than Walker's limitations allow. Thus, Walker proved a *prima facie* case of disability and entitlement to benefits[3] unless ALJ Peffley could determine at Step 5 that jobs exist in significant numbers in the national economy that Walker can perform.[4] (T. 52-53).

ALJ Peffley determined that such jobs exist. He elicited and again relied on testimony of a vocational expert who testified that a person with Walker's residual functional capacity and nonexertional limitations can successfully

---

[3]     *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

[4]     *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009);  *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. §§ 404.1566, 416.966.

perform work duties of a bakery racker, shipping and receiving weigher and bundles boxes routing clerk.

Based on this testimony and "under the framework of 204.00," ALJ Peffley concluded that Walker is "not disabled." (T. 53).

## III. Points of Error

Walker's brief identifies three "Issues Presented" for review:

- the ALJ's RFC determination is unsupported by substantial evidence because he failed to follow the treating physician rule;
- the ALJ's credibility finding is unsupported by substantial evidence; and
- the ALJ's Step 5 determination is unsupported by substantial evidence.

(Dkt. No. 10, p. 3). Walker's first two points complain that, when determining residual functional capacity, ALJ Peffley erred by not applying legal principles governing credibility choices. These points argue that had correct principles been employed, greater weight should have been given to medical opinions of Walker's treating psychiatrist and to Walker's subjective testimony regarding intensity, persistence and limiting effects of her symptoms.[5]

Walker's third point has two prongs. It posits that the vocational expert's testimony does not constitute substantial evidence supporting ALJ Peffley's Step 5 finding because it was given in response to a defective hypothetical question. Further, and in any event, that testimony does not constitute substantial evidence because it was inconsistent with the *Dictionary of Occupational Titles*.

---

[5] The logical inference from these two points is that had treating physician opinion and Walker's subjective testimony been credited, Walker's residual functional capacity rating would have been "none" or much more limited.

Complying with General Order # 18 (Dkt. No. 3), the parties have briefed the above issues, and have presented their respective arguments thereon.[6]

## IV. Preliminary Discussion

A threshold discussion of relevant legal principles will aid understanding of the Commissioner's decision, Walker's challenges thereto and the ensuing analysis.

### A. *Residual Functional Capacity*

Before making findings at Steps 4 and 5 of the sequential evaluation process, an administrative law judge must first assess and articulate a claimant's "residual functional capacity" ("RFC"). This term refers to what claimants can still do in a work setting despite physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545, 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96–8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996). When assessing a claimant's RFC, an administrative law judge must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

---

[6]        *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders).  (Dkt. No. 3).

*B.     Credibility Assessments*

Administrative law judges must make credibility assessments, that is, decide how much weight to give to various pieces of evidence. Special rules govern credibility assessments of treating physician opinion and subjective testimony of claimants.

1.     <u>Treating Source Opinions</u>

The "treating physician rule" requires administrative law judge's to give controlling weight to opinions of claimants' treating physicians regarding the nature and severity of impairments when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Sanders v. Commissioner of Soc. Sec.*, No. 11–2630–cv, 2012 WL 6684569, at *2 (2d Cir. Dec. 26, 2012); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). But, when treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight. *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643–44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). A treating physician's opinion may be discounted when it is internally inconsistent. *See Micheli v. Astrue*, No. 11–4756–cv, 2012 WL 5259138, at *2 (2d Cir. Oct. 25, 2012). Similarly, treating source opinion that lacks underlying expertise,[7] or that is brief, conclusory and unsupported by

---

[7]     *See Terminello v. Astrue*, No. 05-CV-9491, 2009 WL 2365235, at *6–7 (S.D.N.Y. July 31, 2009); *Armstrong v. Commissioner of Soc. Sec.*, No. 05-CV-1285 (GLS/DRH), 2008 WL 2224943, at *11, 13 (N.D.N.Y. May 27, 2008).

clinical findings,[8] or appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected, can be rejected.[9]

When controlling weight is *not* given, an administrative judge must consider certain regulatory factors to determine how much weight, if any, to give such an opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Halloran*, 362 F.3d at 32; *Shaw*, 221 F.3d at 134. Treating physician opinion may be discounted or entirely rejected based upon proper consideration of these factors. *Otero v. Colvin*, No. 12–CV–4757, 2013 WL 1148769, at *5 (E.D.N.Y. Mar. 29, 2013).

Omission of an explicit six-factor analysis, however, is not a ground for an automatic remand. *See Halloran*, 362 F.3d at 31–32. Administrative law judges need not mechanically recite each factor, but rather must only "appl[y] the substance of the treating physician rule." *Id.* at 32; *see also Petrie v. Astrue*, 412 Fed. App'x 401, 407 (2d Cir. 2011) (an administrative law judge need not

---

[8]     *See Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 321 (W.D.N.Y. 2006).

[9]     *See Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *see also Labonne v. Astrue*, 341 Fed. App'x 220, 225 (7th Cir. 2009); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

expressly go through each factor in his decision, so long as it is "clear from the record as a whole that the ALJ properly considered" them).

2.   Subjective Testimony

The best-informed (sometimes only) source of information regarding intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom. Testimony from claimants, therefore, is not only relevant, but desirable. On the other hand, such testimony is subjective and may be colored by a claimant's interest in obtaining a favorable outcome. Hence, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must, in addition, present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996); SSR 96–4p, TITLES II AND XVI: SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS, 61 Fed. Reg. 34488–01, 34489, 1996 WL 362210 (SSA July 2, 1996).

The Commissioner provides explicit guidance for deciding how much weight to give claimants' subjective self-evaluations. First, a formally promulgated regulation requires – once an impairment is identified – consideration of seven objective factors that support or impugn subjective

testimony of disabling pain and other symptoms.[10] Not every factor for weighing subjective testimony applies in every case, and "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the administrative law judge's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11–CV–388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted).[11]

> Second, an internal ruling, SSR 96–7p, directs a two-step process:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms . . . .
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

---

[10] An administrative law judge must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including the following factors:

(i) claimant's daily activities;
(ii) location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[11] *See also Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) factors are not a rigid, seven-step prerequisite) (citing *Snyder v. Barnhart*, 323 F. Supp.2d 542, 546 (S.D.N.Y. 2004))).

SSR 96–7, 1996 WL 374186, at *2.  This ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96–7, 1996 WL 374186, at *2.

Governing circuit law generally mirrors the Commissioner's Ruling.  When an administrative law judge rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

C.    *Step 5 Determination*

The burden shifts to the Commissioner to show that "there is work in the national economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. §§ 404.1566, 416.966.  Generally, an administrative judge elicits expert vocational testimony or consults officially-published data[12] to determine when a claimant's residual work skills can be used in other work and specific occupations in which they can be used.

---

[12]    *See* 20 C.F.R. §§ 404.1566(d) and 416.966(d) (Commissioner will take administrative notice of "reliable job information" available from various publications, including the *Dictionary of Occupational Titles*); *see also* 20 C.F.R. §§ 404.1566(e) and 416.966(e) (Commissioner uses vocational experts as sources of occupational evidence in certain cases).

1. <u>Expert Vocational Testimony</u>

When utilizing a vocational expert, administrative law judges pose hypothetical questions which must reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the vocation expert's testimony. *See De Leon v. Secretary of Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984). When a hypothetical question meets that requirement, and is supported by substantial evidence, expert vocational testimony suffices as substantial evidence supporting a Step 5 finding. *See Mancuso v. Astrue*, 361 Fed. App'x 176, 179 (2d Cir. 2010); *see also Salmini v. Commissioner of Soc. Sec.*, 371 Fed. App'x 109, 114 (2d Cir. 2010); *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).

Conversely, expert vocational testimony given in response to a hypothetical question that does not present the full extent of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, cannot constitute substantial evidence to support a conclusion of no disability. *See Pardee v. Astrue*, 631 F. Supp.2d 200, 211-12 (N.D.N.Y. 2009) (citations omitted); *McAuliffe v. Barnhart*, 571 F. Supp.2d 400, 407 (W.D.N.Y. 2008).

Further, an administrative judge cannot reflexively rely upon expert vocational testimony when it is inconsistent with the occupational information supplied by the *Dictionary of Occupational Titles*. Rather, an administrative judge must elicit a reasonable explanation for any "apparent unresolved conflict" between vocational expert evidence and the *Dictionary of Occupational Titles*, and explain a resolution of that conflict before relying on vocational expert evidence. *See* SSR 00–4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER

RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000).[13]

2. <u>*Grids* and "Framework Analysis"</u>

In limited circumstances, an administrative law judge may take administrative notice of disability *vel non* by adopting and applying findings published in the "Medical–Vocational Guidelines" commonly called "the grids ." *See Roma v. Astrue*, 468 Fed. App'x 16, 20–21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When only *exertional* impairments are in play, and an administrative law judge's findings of residual functional capacity, age, education, and previous work experience coincide with grids parameters, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimants can perform. *See Martin v. Astrue*, 337 Fed. App'x 87, 91 (2d Cir. 2009); *Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can meet Step 5 burden "by resorting to the applicable medical-vocational guidelines (the grids)"); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

When claimants suffer from *nonexertional* impairments (solely or in addition to exertional impairments), administrative law judges may consult and

---

[13]    Social Security Ruling 00-4p provides:

When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict.

*See* SSR 00-4p, 2000 WL 1898704, at *2

utilize the grids as a "framework" for evaluating whether nonexertional impairments result in disability.[14]  Generally, framework analysis involves (a) consulting the grids with respect to the available occupational base given a claimant's exertional capacity, age, education, work experience and transferability of skills, and (b) determining how much that individual's occupational base is further eroded or diminished by nonexertional limitations and/or environmental restrictions.[15]

## V.  Application and Analysis

This section addresses Walker's points of error in the order presented to the court.

---

[14]     *See* SSR 83-12, Titles II And XVI: Capability To Do Other Work – The Medical-Vocational Rules As A Framework For Evaluating Exertional Limitations Within A Range Of Work Or Between Ranges Of Work, 1983 WL 31253 (SSA 1983); SSR 83-14, Titles II And XVI: Capability To Do Other Work – The Medical-Vocational Rules As A Framework For Evaluating A Combination Of Exertional And Nonexertional Impairments, 1983 WL 31254 (SSA 1983); SSR 85-15, Titles II And XVI: Capability To Do Other Work – The Medical-Vocational Rules As A Framework For Evaluating Solely Nonexertional Impairments, 1985 WL 56857 (SSA 1985).

[15]     In *Washington v. Astrue*, No. 5:12-cv-39 (GLS), 2012 WL 6044877, at *5 (N.D.N.Y. Dec. 5, 2012), a case involving a claimant with only a nonexertional impairment, this court described the framework analysis as follows:

> Where the claimant suffers solely from a nonexertional impairment, the ALJ must consider: (1) the RFC reflecting such nonexertional impairment and its limiting effects on the availability of other work; and (2) the claimant's age, education, and work experience. *See* SSR 85-15, 1985 WL 56857, at *2-3 (1985). Those medical and vocational factors must be analyzed under the framework set out in the Medical-Vocational Guidelines § 204.00. *See id.* Although "[t]he assistance of a vocational resource may be helpful" and, in some cases, necessary, SSR 85-15 does not require that the ALJ always call upon the services of a VE. *Id.* at 3. The ultimate inquiry in a case such as this one is whether the claimant can perform unskilled work. *See id.* at *4. Unskilled work requires "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."

*Id.*

*A.     Alleged Violation of Treating Physician Rule*

Dr. Narayana Reddy, M.D. (a psychiatrist at St. Joseph's Hospital), opined that Walker, has poor ability to (1) follow work rules; (2) relate to co-workers; (3) deal with the public; (4) interact with supervisors; (5) deal with work stress; (6) function independently; (7) maintain attention and concentration; (8) understand, remember and carry out detailed instructions; (9) understand, remember, and carry out complex instructions; (10) behave in an emotional stable manner; (11) relate predictably in social situations; an d (12) demonstrate reliability.  (T. 306-07).

Although acknowledging that Dr. Reddy was Walker's treating psychiatrist, ALJ Peffley gave little weight to her opinions.  He considered those opinions as being not supported by objective medical evidence and as inconsistent with the other evidence of record, including mostly normal mental status examinations, improvement on treatment, and decreased symptoms.  (T. 51).  Further, ALJ Peffley observed that on a medical assessment of ability to do work-related activities (mental) form Dr. Reddy chose "poor" in response to many categories of her ability to make occupational, performance and/or social adjustments; however, Dr. Reddy did not check off "none" or "no" abilities in any of these categories.  *Id*.  He further concluded that Dr. Reddy's opinions regarding Walker's fair ability to perform simple work despite having poor social skills around other people is *not* inconsistent with residual function capacity for simple work with only occasional interactions with others.  *Id*.

Since ALJ Peffley declined to give Dr. Reddy's opinions controlling weight, he was obliged to determine how much weight those opinions were due by evaluating them in light of the factors outlined in 20 C.F.R. §§ 404.1527(c),

416.927(c). Although ALJ Peffley did not methodically discuss each individual regulatory factor in order, it is clear that he properly applied 20 C.F.R. §§ 404.1527(c), 416.927(c).

First, ALJ Peffley specifically referenced these regulations, thus indicating his awareness of their applicability and his intent to apply them. (T. 47). Next, regarding regulatory factors 1 and 2, it is evident from designation of Dr. Reddy as a treating source that ALJ Peffley considered nature and duration of the treatment relationship. (T. 51). With respect to factor 3 (evidence supporting treating physician's report), ALJ Peffley had nothing to observe. Dr. Reddy submitted no clinical findings to support her opinions. *Id*.

ALJ Peffley devoted primary attention to consistency of treating physician opinion with the record as a whole (factor 4). ALJ Peffley undertook a thorough discussion of voluminous medical evidence from multiple sources indicating that Walker's impairments are less severe than as articulated by Dr. Reddy. (T. 47-52). Specifically, Dr. Kristen Barry, Ph.D., a consultative psychologist, assessed that Walker is a fairly intelligent person who can follow and understand simple directions and instructions as well as maintain attention and concentration. (T. 250). Another psychological consultant, R. Nobel, assessed no significant limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; and maintaining socially appropriate behavior as well as only moderate limitations in working with co-workers and peers; interacting appropriately with the public; and accepting instructions and appropriately responding to criticism from supervisors. (T. 266-67).

In separate assessments dated August 27, 2008, and September 5, 2008, Dr. John Harkulich and Dr. Garrick Volpin, M.D. (staff psychiatrists at St. Joseph's Hospital) rated Walker a Global Assessment of Functioning score of 70, which reflects mild symptoms, with some difficulty in social and occupational functioning.[16] (T. 223). Additionally, Dr. Roger Levine, M.D., Dr. Shahil Patel, M.D. (staff psychiatrists at St. Joseph's Hospital), together with Dr. Volpin, observed that Walker's mental status was generally "unremarkable." (T. 197, 212, 238, 242, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359).

Opinions of Dr. Barry and Dr. Nobel were based on a complete review of the medical evidence, and were consistent with the weight of the evidence of record. ALJ Peffley acted within his discretion when affording them greater weight. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence."); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (a treating physician's opinion, as to the nature and severity of claimant's condition is controlling only if it is well supported and is not inconsistent with the other substantial evidence in the record).

ALJ Peffley's decision contains no direct or indirect discussion of degree of specialization (factor 5). However, that omission is of no moment. Dr. Reddy is board-certified in psychiatry. But so are doctors Harkulich, Levine, Patel, and Volpin, whose opinions uniformly diverged from those of Dr. Reddy, and which ALJ Peffley found more credible. Thus, this factor was, at best, a wash.

---

[16]     A GAF score in the range of 61-70 indicates mild symptoms. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSIS AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

Finally, with respect to any other relevant factors (factor 6), ALJ Peffley found it significant that Walker acknowledged, contrary to Dr. Reddy's opinion, that she has no difficulty following written and/or spoken instructions. (T. 155).

Careful examination discloses no violation of the treating physician rule when determining Walker's RFC. Accordingly, there is no substantial evidence error insofar as this point of error is concerned.

B.    *Alleged Error in Determining Credibility of Subjective Testimony*

ALJ Peffley found that Walker's credibility in statements concerning intensity, persistence and limiting effects of her symptoms to be "poor." (T. 49). He also determined that "the available evidence of record does not support the degree of symptom severity and/or functional limitation described by the claimant–i.e.,totally debilitating impairments." *Id*. He explained that Walker's responses while testifying were vague, appeared rehearsed, and lacked specificity that would otherwise have made them more persuasive. *Id*. ALJ Peffley further found that Walker's "activities of daily living do not indicate that she is disabled." (T. 50).

Walker argues that these credibility determinations are not supported by substantial evidence because ALJ Peffley: (1) failed to consider whether Walker's manner of testifying would reasonably result from her mental impairments; and (2) improperly equated activities of daily living as evidence of an ability to work on a regular and continuing basis. (*See id*., p. 14).

ALJ Peffley evaluated credibility of Walker's subjective symptoms based on the requirements of 20 C.F.R. §§ 404.1529, 416.929. (T. 47-48). This indicates his awareness of correct legal principles and his intention to apply

them. *See Britt v. Astrue*, 486 Fed. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96–7p as evidence that the administrative law judge used the proper legal standard in assessing the claimant's credibility).

### 1.    Manner of Speaking

As for Walker's first argument, one might reasonably speculate abstractly that mental impairments can affect manner of speech. Walker, however, did not testify that her mental impairments affect her ability to speak, and there is no reference to impaired, affected or abnormal speech in the voluminous medical records, including records from treating physician Reddy.[17] Rather, multiple doctors (*e.g.,* Drs. Harkulich, Levine, Patel, and Volpin) observed that Walker's mental status was generally unremarkable. (T. 197, 212, 238, 242, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359). Specifically, her speech was fluent and clear. She had adequate expressive and receptive language skills. (T. 249). She easily engaged in conversation and did not appear overly anxious or depressed. *Id.*

### 2.    Activities of Daily Living

ALJ Peffley found that Walker's "activities of daily living do not indicate that she is disabled." (T. 50). He emphasized that Walker is able to care for her personal needs independently; take care of pets; prepare simple meals; wash dishes; clean her room; go for walks and ride bicycles; shop for groceries,

---

[17]    The evidence of record contains conflicting and/or inconsistent testimony concerning Walker's alcohol and drug abuse as well as false and/or delusional memories. (T. 22, 196, 212, 214, 214-15, 248). This does not bolster credibility; rather, it can contribute to an adverse credibility finding.

clothing, and household supplies; listen to music, socialize with her boyfriend, and occasionally visit museums. (T. 149-53, 227, 374).

There is nothing amiss about considering activities of daily living when evaluating credibility of a claimant's subjective testimony. Governing regulations (20 C.F.R. §§ 404.1529(c), 416.929(c)) expressly identify such activities as relevant to claimant credibility, and courts affirm reliance on a claimant's activities of daily living as substantial evidence supporting an administrative law judge's credibility determination. *See Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (such evidence that plaintiff is capable of engaging in many and varied activities despite allegations of severe pain is supportive of a conclusion that his alleged symptoms are not disabling).

Here, activities of daily living evidence impugns Walker's subjective testimony regarding the disabling extent (*e.g.*, an inability to work on a regular and continuing basis) she alleged. Further, as ALJ Peffley noted, Walker's medication, when taken, effectively controls limiting effects of Walker's symptoms. (T. 20, 25-26, 49-50).

Careful review discloses no evidence that ALJ Peffley reviewed Walker's activities of daily living in an improper context. Because he properly weighed "the objective medical evidence in the record, [Walker's] demeanor, and other indicia of credibility," his credibility assessment is conclusive. *Lewis v. Apfel*, 62 F. Supp.2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). Thus, there is no error in ALJ Peffley's determination that Walker's subjective statements were less than fully credible.

*C.*     *Alleged Error in Relying on Vocational Expert Testimony*

Walker's final argument is that ALJ Peffley's Step 5 determination is unsupported by substantial evidence because it is based on vocational expert testimony given in response to an incomplete hypothetical question and which, in any event, was inconsistent with ALJ Peffley's RFC determination and the United States Department of Labor's *Dictionary of Occupational Titles*. (*See* Dkt. No. 10, pp. 15-16).

1.     <u>Hypothetical Question</u>

The first prong is a pure bootstrapping argument wholly based on Walker's first two points of error.[18] The premise is that those supposed errors precipitated a higher residual functional capacity rating with fewer limitations than Walker actually proved. Hence, the hypothetical question posed to the vocational expert based on that erroneous residual functional capacity evaluation was incomplete and defective. This, in turn, rendered the vocational expert's testimony unreliable evidence to support a Step 5 determination that Walker can perform alternative, available work.

This argument falls under its own weight. ALJ Peffley's residual functional capacity evaluation was not erroneous in either respect advocated by Walker. Thus, his hypothetical question was not defective simply because it did not factor in more severe limitations opined by Dr. Reddy and urged by Walker. A valid hypothetical question need only incorporate limitations that an

---

[18]     Walker claims, for example, the jobs identified by the vocational expert and relied upon by the administrative judge, are inconsistent with the opinion of Dr. Reddy, who noted that Walker is "unable to have sustained concentration." (*See* Dkt. No. 10, p. 15 (citing T. 205)). Walker does not provide any other support for this contention.

administrative law judge finds credible and which are supported by substantial evidence. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998) ("The ALJ based his hypothetical question upon those limitations which he found to be credible and supported by the evidence. The limitations which the ALJ included in his hypothetical question were proper and supported by the evidence.").

The hypothetical question posed to the expert exactly matched Walker's residual functional capacity as determined by ALJ Peffley. (T. 32-33). It also factored a person of Walker's age, education, and work background. *Id.* That residual functional capacity rating and other factors posed to the expert are supported by substantial evidence. Therefore, ALJ Peffley's use of and reliance on expert vocational testimony was appropriate. *See Mancuso*, 361 Fed. App'x at 179 (". . .Commissioner may rely on a vocational expert's testimony . . . so long as . . . hypothetical is based on substantial evidence." (citation omitted)); *see also Salmini*, 371 Fed. App'x at 114 ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.").

## 2. Dictionary of Occupational Titles

ALJ Peffley's residual functional capacity assessment states that Walker can work only in an environment free of fast pace production requirements. Walker argues that the vocational expert's testimony does not provide substantial evidence supporting ALJ Peffley's Step 5 determination that Walker can perform alternative, available work because the expert testified that Walker can work in jobs that require ability to perform work according to pace. Walker points to the *Dictionary of Occupational Titles*, as providing that rackers and

routing clerks must be able to perform repetitive, or perform continuously the same work, according to set procedures, sequence, or pace.[19] Further, Walker argues that shipping and receiving clerks must have ability to function in situations requiring precise attainment of set limits, tolerances, or standards.[20]

While resourceful, this argument is not persuasive. ALJ Peffley expressly found, pursuant to SSR 00-4p, the vocational expert's testimony to be consistent with the information contained in the *Dictionary of Occupational Titles*. Indeed, none of the *Dictionary of Occupational Titles*' listings of requirements for the above jobs indicates a need to work at a *fast* pace. Consequently, there is no basis for a court to conclude that jobs identified by the vocational expert conflict with Walker's residual functional capacity rating or the *Dictionary of Occupational Titles*.

Walker provides no good reason to reverse ALJ Peffley's Step 5 finding for lack of substantial evidence.[21]

## VI. Recommendation

The Commissioner's decision denying disability-based benefits should be **AFFIRMED**.

---

[19]    *See* DICTIONARY OF OCCUPATIONAL TITLES, Code 524.687-018, 1991 WL 674400 (4th ed. 1991); *see also* DICTIONARY OF OCCUPATIONAL TITLES, Code 222.687-022, 1991 WL 672133 (4th ed. 1991).

[20]    *See* DICTIONARY OF OCCUPATIONAL TITLES, Code 222.387-074, 1991 WL 672108 (4th ed. 1991).

[21]    Walker does not complain of ALJ Peffley's use of Medical-Vocational Guideline section 204.00 as a "framework" for determining that Walker is not disabled. ALJ Peffley's decision reflects no erosion-of-occupational-base finding that framework analysis contemplates. That is of no concern, however, as the framework language appears to be unnecessary and meaningless surplusage. ALJ Peffley could and obviously did base his Step 5 finding on expert vocational testimony alone.

## VII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___19___ day of _____June_____ 2013.

Earl S. Hines
United States Magistrate Judge